UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


TYRONE POINTER,

       Petitioner,

v.                            Case No. 8:06-cv-1603-T-17MAP

SECRETARY DEPARTMENT OF CORRECTIONS,

       Respondent.

_____/

## **ORDER**

This cause is before the Court on Petitioner Pointer's second amended 28 U.S.C. §

2254 petition for writ of habeas corpus. (Doc. No. 11).  Pointer challenges his conviction

and sentence entered by the Sixth Judicial Circuit, Pinellas County, Florida.  Pointer was

convictioned of strong-armed robbery and fraudulent use of a credit card in state circuit

case number CRC02-10350CFANO. A review of the record demonstrates that, for the

following reasons, the petition must be denied.

Background

On October 16, 2002, the State Attorney filed an Amended Felony Information

charging Pointer with two counts of strong-arm robbery and one count of fraudulent use of

a credit card. (Exh 17: Vol. 1: R 28-29.[1] The case proceeded to a jury trial before the Honorable Richard A. Luce, Circuit Judge, beginning May 13, 2003. Pointer was represented by court-appointed counsel, Elizabeth Hittos, Esquire. On May 14, 2003, the jury found Pointer guilty of all three offenses as charged. (Exh 17: Vol. 1: R 49-51). On the same day, the court sentenced Pointer to thirty (30) years imprisonment as a habitual felony offender with a fifteen (15) year minimum mandatory term as a prison releasee reoffender on each of the two robbery counts, and to ten (10) years imprisonment as a habitual felony offender on the fraudulent use of a credit card count, with all counts running concurrently. (Exh 17: Vol. 1: R 71-76).

## Facts Adduced at Trial

The following is taken from the State's statement of facts provided in the answer brief of appellee on direct appeal:

> Anna Richards testified that she was walking through the Palm Harbor Publix parking lot shortly after noon in May, 2002, when she felt something hit her in the head. She had her purse tucked under her arm, and when she got hit on the back of the head, she lost her grip on the purse when she stumbled. She turned and saw the silhouette of a man running with her purse. (T146, 148-49). The person was a black male wearing a collarless Polo shirt with short sleeves and long pants. He had Richards' purse in his hand and was running. Richards did not get a look at the man's face. (T150). Investigating officers did not show Richards any photographs in an effort to obtain the perpetrator's identity. (T154).

> Richards chased the man, but did not catch him. (T148). She saw him get into a two-door red car with "black film windows" and no license plate.

---

[1] Respondent filed the four-volume record on direct appeal as Respondent's Exhibit 17. The pleadings and documents found in Volume 1 are referred to by volume number followed by the clerk's number in the bottom center of the page. The trial transcript is contained in Volumes 2-4, and is referred to by volume number followed by the reporter's page numbers located in the upper right hand corner of the page.

(T153). Richards stated that, but for getting hit and stumbling, she would not have given up her purse. (T149).

Richards' purse had contained "some cash." She stated, "I know of a twenty and a ten-dollar bill which I had just put in there that morning." (T151). Richards' purse also contained her Capitol One credit card. (T151). Richards testified without objection that one of her credit card companies informed her of two failed attempts to use the credit card the same day. (T152).

Nancy Frioud responded positively that she was in the vicinity of a Publix in Palm Harbor on "May 17th of last year." (T155). Frioud testified that she was in the parking lot putting groceries into her car when she heard screaming. She looked in the direction of the scream, and "saw a man come running between the trees and the street and run into the parking lot and jump in a car." (T156). A woman was chasing the man, and the woman was crying. (T156). Frioud did not get a close look at the man, and would not be able to identify him if she saw him again. (T156). The man jumped into the driver's side of a small red car which had a "dull finish." The car "really screeched out of the parking lot." (T157). Frioud called 911 and told what she had seen. Law enforcement did not ask her to try and identify the perpetrator from a photopack. (T158-59).

Ricardo Bello testified that he was near the Publix in Palm Harbor on May 15, 2002, when he heard a loud scream. (T160). He turned and saw a man running with a purse. A "little old lady" was chasing the man with the purse. Bello was too far away to get a look at the man's face. (T160-62). Bello testified that there was a mid-size red car with "a bad paint job" parked nearby. The man jumped into the car "and they took off." (T161). Bello got into his own car and tried to chase the red car, but gave up after about four or five miles. (T161). Bello returned and gave a statement to law enforcement. Officers never showed Bello a photopack. Bello would not have recognized the perpetrator in a photograph because he never saw the man's face. (T163).

Ann Werner testified that on May 15, 2002, she was working in a second-floor office of a bank which overlooked the Publix parking lot in Palm Harbor. (T164-65). Werner stated she "observed a gentleman running across the parking lot and pushed a woman and grabbed her pocketbook and took off." The man pushed the woman and she stumbled. The man grabbed the purse and fled. (T165). Werner was not close enough to see the man's face. He ran through a wooded area, and the woman chased after him. (T165). The man was wearing a baseball cap and a tee-shirt. (T166). Werner gave a statement to law enforcement, but was not able to make an identification of the perpetrator. (T166-67).

- 3 -

On May 27, 2002, Tehmi Dastoor was in the parking lot of a Publix in the Tyrone area of St. Petersburg around 2:00 p.m. (T168-69). She had her purse on her grocery cart as she was placing her groceries into her car. She saw a red car drive toward her. (T169-70). Dastoor testified, "[A]s I was taking my purse from the grocery cart, a man lunged out from the passenger's side of the car three-quarters of the way out. He grabbed my arm. He pushed me back. I stepped back twice. I did not fall. He grabbed my purse and they drove off." (T169-70, 177). The red car had heavily tinted windows and no license plate. (T170, 177). She testified that the man grabbed her arm and pushed her back before she could grab her purse. (T178). Dastoor testified that she had thought she might be able to recognize the man if she saw him again, but she was unable to make an identification when the police showed her photographs. (T172, 178).

Dastoor stated that but for the grabbing, she would not have given up her purse. (T170- 71). Dastoor's purse contained approximately $100 and various credit cards, which she gave no one permission to use. (T171, 173). The credit cards in Dastoor's purse included Mobil, Amoco, Chevron, American Express Gold, and MNBA Platinum Plus MasterCard. (T173). There were also Blockbuster, Hertz, library, AAA, voter identification, Sam's Club, Sears, JCPenney, and Burdines cards. (T174). There were others as well that officers had recovered from various locations in Pinellas County. (T175).

Joshua Waits testified that he was at the Publix in St. Petersburg on May 27, 2002. (T180). He heard a woman screaming and saw her pointing toward a car. The car was a red 1989 or 1992 Dodge Duster or Plymouth Sundance. It had very dark tinted windows, so Waits could not see any people. Waits stated that the car had a "fairly new paint job." (T183). Waits was unable to describe anyone to law enforcement, and did not see a man with the woman's purse. (T183-84).

Beverly Gould testified that she loaned her 1990 Plymouth Sundance to her daughter, Crystal Miller, in May, 2002. (T185-86). The car was red with a faded-out paint job. (T186). Gould did not know Appellant. She recognized Miller on a videotape she had viewed, and recognized Miller on a still photograph. (T187-88). Gould was not told that anybody was going to paint the car; she found out about the new paint job after the fact. (T188).

Frank Way was in charge of security at K-Mart on 34th Street South in St. Petersburg on May 27, 2002. (T192, 197). Way reviewed a videotape of a transaction that occurred in the store's electronics department on May 27, 2002. The videotape depicts the purchase of an Xbox. Way identified a receipt from the store with an apparent signature of "Tehmi Dastoor." (T193-94, 199). Subsequent to that purchase, Way received a call from the K-Mart on 34th

Street North, warning him to be on the lookout for the use of credit cards bearing the name "Tehmi Dastoor." (T200). Way later provided the videotape and the receipt to law enforcement. (T193-94, 233-34).

Roy Allen was the store manager for the K-Mart store located at 34th Street North in St. Petersburg on May 27, 2002. (T205-06). Allen went to the electronics department to verify a credit card transaction. (T206). The first credit card the person tried to use was declined. (T207). Then, the person presented a second card, which Allen believed was a MNBA Platinum Plus card, and this card was not declined. Allen noticed that the name on the card - "Tehmi Dastoor" - did not match the apparent nationality of the woman presenting the card. When the woman placed the signature on the credit slip, Allen asked for identification. The woman rummaged through her purse, said her identification must be "out in the car," then left. The man who was with her asked for the card, but Allen kept the card. (T206-08).

Allen identified Appellant [Pointer] in court as the man who was with the woman on May 27, 2002, trying to make the purchase. (T211-12). Allen stated he recognized Appellant by his facial features and "fidgety" mannerisms; Allen was within arm's-length of the man during the attempted transaction. (T212, 216). Allen was later able to make an identification of the woman from a photopack. (T217, 219). On cross-examination, Allen stated that he had identified Appellant in a photopack as well; however, he stated on redirect that he had, in fact, not made an identification from a photopack of a group of males. (T217, 220).

George Clifton, the loss prevention manager at the 34th Street North K-Mart location, testified that he observed the attempted credit card transaction in the electronics department by a black man and a white woman claiming to be "Tehmi Dastoor." (T221-22, 227-28). The video surveillance camera which Clifton was operating had zoom capabilities. (T223, 233-34). At a later date, law enforcement showed Clifton a photopack containing six white females, and Clifton was able to identify the woman from the attempted transaction. The officer also showed Clifton a group of six photographs of black men, but Clifton was unable to make an identification of the man from any of the photographs. (T223-25, 228-29).

Corporal Paul Martin testified that he was involved with the investigation of the May 15, 2002, robbery of Richards in Palm Harbor. Martin worked with Detective Halle, the lead detective on the Tehmi Dastoor matter. Martin testified that some of the contents of Richards' purse were recovered in the Tyrone area of St. Petersburg when an unknown person found them and turned them in at a business. (T237-40). Efforts at recovering fingerprints from the credit cards were unsuccessful. (T242-43).

- 5 -

Martin testified that he was present when Halle interviewed Appellant on June 13, 2002. (T241, 262). Halle advised Appellant of his constitutional rights prior to the interview, and Appellant, after stating that he understood his rights, made a waiver. (T259- 62). The officers had interviewed Crystal Miller and Frederick Frasier prior to interviewing Appellant. (T249). The interviews of Miller and Frasier had been taped. (T250). Martin testified that Appellant was asked at the completion of his interview if he wished to make a taped or a written statement, and Appellant made a written statement. (T250, 252-53).

Martin never showed Allen a photopack containing Appellant's picture. (T257-58).

Detective Halle testified that he became involved in the incident involving Dastoor. (T263, 265). Halle testified that the Pinellas County Sheriff's Office had Miller and Frasier under surveillance for a time prior to their June 11, 2002, arrests. (T316- 17). When Miller and Frasier were arrested in or about the second week in June, 2002, Appellant was not with them. (T316-17).

On June 13, 2002, Halle and Martin interviewed Appellant. Prior to the interview, Halle advised Appellant of his constitutional rights. After indicating that he understood his rights, Appellant agreed to speak with the officers. (T267-71). Halle testified that Appellant was "curious" about why the officer wanted to speak with him. (T271-72, 293). Halle had interviewed Miller and Frasier prior to his Appellant's interview. (T290). Halle did not tape Appellant's interview; however, if someone requests that their interview be taped, Halle would tape it. (T291).

Appellant first told Halle that he had no knowledge of the incidents. (T295). Halle told Appellant that he had already interviewed Miller and Frasier, but did not tell Appellant what they had said. (T296, 232). Halle testified on cross, "We certainly mentioned Crystal Miller and Frederick Frasier, and they had indicated that he was involved with them. We certainly didn't articulate any details as to what we were talking about." (T296). Halle asked Appellant whether he knew Miller. Appellant stated that he had only known Miller for two to three weeks, and that Miller was a friend of Appellant's brother, Frasier. (T272).

Halle asked Appellant about the incident on May 27th involving Dastoor. Appellant told Halle that he was in the backseat of the car that day, Frasier was in the front passenger seat, and Miller was driving. (T272-74). He explained that "[t]hey were going out to get money to buy drugs to support his cocaine habit." (T274). They pulled up to a woman loading groceries into her vehicle; Frasier reached out and grabbed the woman's purse, and Miller sped away. (T274). Appellant, Miller, and Frasier then went through the woman's

- 6 -

purse. Halle testified, "He told me at the time he wasn't sure exactly how much money was in there. I told him the victim claimed there was about a hundred and twenty dollars, and he told me, 'That sounds about right.'" (T274).

After the Dastoor robbery, Appellant, Miller, and Frasier went to the K-Mart store on 34th Street South. Appellant and Miller went inside, and Frasier stayed in the car. Appellant and Miller purchased an Xbox using one of Dastoor's cards. Appellant carried the Xbox out of the K-Mart. (T275). They sold it for $150, and split the proceeds three ways at $50 each. (T278).

When they left the K-Mart on 34th Street South, they went to the K-Mart on 34th Street North. Again, Appellant and Miller went into the store while Frasier stayed out in the car. (T275). Appellant stated that they were going to try and purchase more merchandise with the stolen credit cards. They went to the electronics department to purchase another Xbox. Appellant thought the purchase was going to go through; however, someone who appeared to be a manager came out and took over the transaction. (T276-77). Appellant told the officers that the manager asked Miller for identification. Miller looked through her purse, then told the man that her identification was in the car. Appellant asked the manager for the card, but the manager told Appellant that he would give it back when identification was presented. (T277-78).

Appellant also discussed the incident involving Richards at the Publix in Palm Harbor which occurred on May 15. Appellant told Halle that he ran up to a woman with a purse and grabbed the purse. He fled on foot and jumped into Miller's vehicle. Miller sped away. (T288-89). Appellant went through the purse, and found only a small amount of money. Halle stated, "I think he said there was twenty-four dollars in there and there wasn't much to split between the three of them." (T288). Thereafter, they went to a K-Mart on 34th Street and tried to use a credit card. (T288).

Toward the end of Appellant's interview, Halle gave Appellant an opportunity to make a written statement if he desired to do so. (T282). Appellant wrote: "I, Tyrone Pointer, did not want on [sic] one to get hurt by snatching purses from these people we took purses from. I apologize to all those people from the bottom of my heart. Sincere, Tyrone Pointer." (T283). Halle testified that he helped Appellant with spelling but did not tell Appellant what to write or how much to write. He did not discuss the names of the victims with Appellant. (T300-01, 325).

Dastoor's MNBA Platinum Plus card, which was recovered from the 34th Street North K-Mart, was sent for fingerprint processing. Other contents of Dastoor's purse, which had been recovered at various locations around St. Petersburg, were also submitted for fingerprint processing. Halle testified that

some of the cards had been "positive for ridge detail;" however, none were of sufficient quality that an identification could be obtained. (T279-81).

The State entered into evidence a photograph of Appellant taken in June, 2002, as well as still photographs from the videotape at the 34th Street North K-Mart store. (T283-85).

Halle testified that, during his investigation into the Dastoor robbery, he put together a photopack of six females which included Miller. Halle presented the photopack to Clifton, who picked Miller's photograph as the woman who presented Dastoor's credit card. (T285-86). Allen was also able to identify Miller as the woman who had presented Dastoor's card. (T287-88).

Halle also showed Clifton a photopack of six males which did not include Appellant. Clifton was unable to make any identification from that photopack. (T286-87). Allen was also shown a photopack of males which did not include Appellant. Allen was unable to make an identification of the person presenting Dastoor's cards from that photopack. (T287).

On cross, the defense questioned Halle about the investigation into Alton Hollis as a possible suspect in the crimes. Halle testified that he had presented a photopack which did not include Appellant to four or five witnesses. The photopack had included a photograph of Hollis. Halle did not speak with Hollis. (T301-02).

Defense counsel asked Halle whether he had compared a photograph of Hollis to the videotape of the credit card transaction. The State objected on the basis that the defense was questioning Halle in such a manner as to elicit his opinion regarding the ultimate fact at issue. (T302-04). The following proffer took place outside the presence of the jury:

[DEFENSE COUNSEL]: Detective – Sergeant, did you at any point in time give sworn testimony in this case in which you indicated that you believed that the person in the videotape – that you determined the person in the videotape to not be [Appellant]?

* * *

[HALLE]: You're asking me if I determined that one hundred percent it's not [Appellant]?

[DEFENSE COUNSEL]: Well, just determined it not to be [Appellant].

[HALLE]: I can't tell you for certain if it is him or not – it could be – it's not clear on that video.

(T306).

Defense counsel then showed Halle a portion of Halle's prior deposition in which Halle had stated, "I didn't determine it to look like [Appellant]." (T307). Halle stated in the proffer, "What I was telling you is I did not make a positive identification." (T307). Halle stated that he did not intend his remark to mean that he affirmatively determined the person in the video was not Appellant. (T308). The State reiterated its objection "on the grounds of opinion." The prosecutor argued, "[It] [g]oes to the ultimate issue and remains for the jury." The trial court overruled the State's objection. (T309).

Before the jury, Halle denied he had previously determined the person in the videotape was not Appellant. (T309). Defense counsel read Halle's remark from his deposition in which Halle had stated, "I didn't determine it to look like [Appellant]." Halle testified he was trying to convey in his deposition that he could not make a positive identification from the videotape. (T310-11).

On redirect examination, Halle testified that he had included a photograph of Hollis in photopacks which were shown to Allen and Clifton at K-Mart, and neither witness picked anyone out of the photopacks. (T318). Halle testified that, at that time, he did not know anything about Appellant as a possible suspect. (T318). On June 11, 2002, after a period of surveillance, Miller and Frasier were arrested. (T317). In their statements, Miller and Frasier implicated Appellant in the crimes. (T318-19). Two days later, Halle spoke with Appellant. Halle testified on redirect that Hollis was no longer a suspect at that point. (T319-20).

The following took place on Halle's redirect examination:

[PROSECUTOR]: Let's talk about your view of the videotape, sir. Now, on cross-examination there was a couple of questions about whether or not you're venturing your personal opinion as to whether or not it's [Appellant] in the videotape. You got asked t h a t on cross examination, right?

[HALLE]: Yes.

[PROSECUTOR]: Okay. Let me just ask you whether or not you have an opinion on the issue of guilt in the matters before the court right now in the accusations of [Appellant]. Do you have an opinion of his guilt or not?

[HALLE]: Yes.

[PROSECUTOR]: I'm not going to ask what that opinion – (T320-21).

At the bench, the prosecutor stated that he was not questioning Halle any further on the matter. (T321).

Appellant made a motion for judgment of acquittal at the close of the State's case, arguing that the State had not proven its case because no witness was able to identify Appellant and no fingerprint identification linked Appellant to the crimes. Appellant argued that the only witness who had been able to identify Appellant - Allen - had been "discredited" because he had, at first, mistakenly testified that he had made a positive identification of Appellant from a photopack. The trial court denied Appellant's motion. (T327-38).

Answer Brief of Appellee at pp. 1-14.

Pointer pursued a direct appeal. Corinda Luchetta, the Special Assistant Public Defender assigned to represent Pointer on appeal, filed an initial brief (Exhibit 1) raising five issues:

Issue I

The trial court erred when it denied the motion for directed verdict and/or judgment of acquittal as to count one of the information; the evidence was insufficient to identify Mr. Pointer as the perpetrator and the evidence did not establish a robbery had been committed.

Issue II

The trial court erred when it denied Mr. Pointer's motion for judgment of acquittal on count two because the evidence was insufficient to convict him for robbery either as a principal or an aider and abetter.

Issue III

The court erred when it denied the motion for judgment of acquittal on count one because the state's evidence did not establish a robbery occurred.

Issue IV

The cumulative effect of the prosecutor's improper closing arguments was reversible error.

Issue V

Count one of the information should be dismissed due to a variance between the evidence and the charging document.

The State filed its answer brief on or about May 28, 2004. (Exhibit 2). On October 1, 2004, in Case No. 2D03-2706, the Second District Court of Appeal filed a per curiam unwritten opinion affirming Pointer's convictions and sentences. (Exhibit 3). *Pointer v. State,* 888 So. 2d 34 (Fla. 2d DCA 2004)[Table]. The mandate issued on October 27, 2004. (Exhibit 4).

On October 26, 2004, Pointer filed a Motion for Correction of Illegal Sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure. (Exhibit 5). The trial court summarily denied the motion on November 3, 2004. (Exhibit 6). Pointer appealed. On April 1, 2005, in Case No. 2D04-5286, the Second District Court of Appeal filed a per curiam opinion with citation. (Exhibit 7). *Pointer v. State*, 897 So. 2d 552 (Fla. 2d DCA 2005)[table]. The court affirmed the denial of the motion to correct sentence without prejudice to any right Pointer might have to file a motion for postconviction relief. *Id.* The court's mandate was issued on April 28, 2005. (Exhibit 8).

On March 11, 2005, Pointer filed a pro se motion to vacate and set aside judgment and sentence pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 9). The motion presented fourteen allegations of ineffective assistance of trial counsel. On June 20, 2005, the trial court issued a written order, with attachments, summarily denying all claims. (Exhibit 10). Pointer appealed the adverse ruling. No briefs were filed. On

October 19, 2005, in Case No. 2D05-3651, the appellate court filed a per curiam unwritten opinion affirming the denial of postconviction relief. (Exhibit 11). *Pointer v. State*, 914 So. 2d 966 (Fla. 2d DCA 2005)[table]. The mandate was issued on November 9, 2005. (Exhibit 12).

On October 5, 2005, Pointer filed a second motion to correct sentence pursuant to Fla. R. Crim. P. 3.800(a). (Exhibit 13). The trial court summarily denied the motion on November 14, 2005. (Exhibit 14). On April 19, 2006, in Case No. 2D06-546, the Second District Court of Appeal filed a per curiam affirmance, with citation. (Exhibit 15). *Pointer v. State,* 928 So. 2d 348 (Fla. 2d DCA 2006)[table]. The mandate was issued by the court on May 10, 2006. (Exhibit 16).

## THE PRESENT PETITION

Pointer filed the original § 2254 petition on August 30, 2006. (Doc. No. 1). The original petition was dismissed without prejudice and Pointer was directed by this Court to file amended and second amended petitions. (Doc. Nos. 2 & 10). Pointer filed the second amended petition on December 4, 2006. (Doc. No. 11). This order addresses the second amended petition, which contains twelve allegations of ineffective assistance of trial counsel, and also addresses Pointer's allegation (stated in ground two of his first amended petition) that Pointer was denied his Sixth Amendment right to effective assistance of counsel where trial counsel failed to move to suppress Pointer's confession. (See Doc. Nos. 29 & 32).  The Petition is timely.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Respondent submits the claims should be denied because they are procedurally barred or fail to meet the prerequisites of 28 U.S.C. § 2254(d) and (e).

Discussion

Ground One

Pointer alleges his trial attorney was ineffective for failing to object to an insufficient notice of enhanced penalty provided by the State. In his motion for postconviction relief, Pointer specifically claimed that the State's notice failed to provide any guidance as to the specific designation the State sought to impose under the habitual felony offender statute and that he was prejudiced since at sentencing the State attempted to sentence Pointer as a habitual violent felony offender. The trial court properly found this claim to be without merit:

> At paragraph 7 on unnumbered page 2 of his motion, Defendant contends that counsel failed to object to the insufficient notice of enhanced penalty provided by the State. Specifically, he states that the State's notice failed to provide any guidance as to the specific designation the State sought to impose under the Habitual Offender's Statute and that he was prejudice since at sentencing the State attempted to sentence Defendant as a habitual violent felony offender.
>
> The record indicates that on July 16, 2002, well in advance of his trial and sentencing, that the State served Defendant and his attorney with sufficient notice embracing all the sentencing designations under section 775.084, Fla. Stat. *See Exhibit C: Notice of Enhanced Penalty.* The notice requirement does not require the State to specify the exact designation that it will seek under section 775.084(3)(a), Fla. Stat. at sentencing. "[W]hen a 'shotgun' notice informs a defendant that he is subject to all sentencing schemes under section 775.084, a defendant is given all the notice necessary to prepare for sentencing in his case." *Washington v. State,* 895 So. 2d 1141, 1143 (Fla. 4th DCA 2005). This Court is unpersuaded by Defendant's assertion that his case is indistinguishable from that in *Bell v. State,* 747 So. 2d 1028 (Fla. 3d DCA 1999). The defendant in *Bell* was sentenced as a violent career criminal, upon being serviced only with a notice referencing the statute number, unlike Defendant, in the instant case, who was sentenced to the least harshest classification as a habitual offender. *Id.* at 1143. This claim is denied.

(Exh 10: Order denying relief at p. 2).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of

such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and

he is not entitled to habeas corpus relief on ground one.

Ground Two

Pointer alleges counsel was ineffective for opening the door to testimony from

Detective Halle regarding Pointer's previous arrests and the fact that at the time of his

interrogation in this case Pointer had other pending offenses. The state trial court ruled on

this claim:

> Pointer cites to no portion of the record explaining when and where counsel unwittingly opened the door nor that the State even introduced Defendant's "other charges and his previous arrests." The Court's review of the trial transcript indicates that counsel knowingly in her opening statement told the jury that Defendant was already in jail on other unrelated matters at the time of his interview in the above referenced case. *See Trial Transcript at pp. 142 — 143.* Nowhere in the trial transcript does the State mention anything other than what counsel already told the jury; the State never mentioned any previous arrests, the nature of the charges in was being held on prior to the instant offense, nor the existence of Defendant's prior criminal record.

> Defendant states he was prejudiced by counsel in telling the jury that Defendant was already in jail for another charge when counsel could not produce evidence at trial that would support her statement in opening argument that Defendant was promised leniency on that other charge. These statements were made at part of a comprehensive trial strategy. It is recognized that whether a particular action on the part of counsel was part of a cogent, trial strategy usually requires an evidentiary hearing. *Hamilton v. State*, 860 So. 2d 1028 (Fla. 5th DCA 2003); *accord Harris v. State*, 768 So. 2d 1179 (Fla. 4th DCA 2000). Since none of the witness or victim of the robberies could identify Defendant, the most compelling and damaging evidence against Defendant was his confession to all three offenses. *See id. at pp. 273 — 278; 282 — 283; 288 289.* To offset the confession, the record indicates that counsel's strategy was to portray the confession as unreliable under all the circumstances, not just that Defendant was promised leniency, and to attack the detective's investigation of the offenses as insufficient. *See id at pp. 142 — 143.* During the testimony of the primary detective, she attempted to elicit testimony to invoke distrust in the confession and errors in investigating the offenses. *See id. at pp. 289 — 304; (305 — 308 omitted as proffered testimony); 309 - 316.* The implication from the fact that Defendant

was already in jail, coupled with the other circumstances, being that Defendant was susceptible of being tricked into providing a false confession. *See id. at 380 — 389.*

Further, Defendant cannot show the prejudice prong of the *Strickland* test, that there is a reasonable probability that the outcome would have been different if counsel did not mention this information to the jury. Although no witnesses identified Defendant at the scene of the robberies in count one and two, not only did Defendant confess, K-Mart store manager Roy Allen positively identified Defendant in the courtroom (having been given no opportunity to do so by a photo-pack) as the male accompanying the female at his store in a failed attempt to use the credit card stolen in count two. *See id. at pp. 211 — 212; 286 — 287.* The State further introduced the two surveillance videotape taken from different K-Marts where the perpetrator attempted to use the stolen credit cards. *See id. at p. 4.* This claim is denied.

(Exh 10: Order denying relief at pp. 3-4).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground two.

Ground Three

Pointer complains his counsel was ineffective for opening the door to hearsay testimony from his co-defendants implicating Pointer in the crimes charged. The state court stated:

As stated above at Ground Two, defense counsel's strategy was to convince the jury that the detective relied on the co-defendants and ceased investigating once he had a suspect and to show that Defendant was coerced by police tactics into providing a false confession. Even if counsel did not introduce this evidence, based on Defendant's confession, the surveillance tapes, and Mr. Allen's identification of Defendant as the male accompanying the female perpetrator, there is not a reasonable probability that the outcome would have been different. As Defendant has not met the prejudice prong of the *Strickland* test, this claim is denied.

(Exh 10: Order denying relief at pp. 3-4).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground three.

Ground Four

Pointer alleges that counsel was ineffective for failing to call Detective Joe Dente as a defense witness. He states the detective would have testified concerning his initial suspect, Alton Hollis, who was apprehended with the co-defendants and who bore a resemblance to Pointer. Again, the state court reasonably rejected this claim in light of Pointer's failure to prove prejudice:

> Even if the initial suspect was arrested with the co-defendants and resembled Defendant, Defendant cannot demonstrate the prejudice prong of the *Strickland* test. Defendant does not explain how the timing of the co-defendant's arrest with the initial suspect and how he resembles Defendant would be relevant to Defendant's guilt. Nor does Defendant specifically state the content of Det. Joe Dente's testimony and explain how this would supplement Det. Halle's testimony.
>
> Further, defense counsel raised the issue of the first suspect, Alton Hollis, in her cross- examination of Det. Halle. *See Id. at pp. 301 — 302; 315 —316.* On re-direct, Det. Halle testified concerning his reasons for dispensing with Alton Hollis as a suspect. *See id at pp. 317 — 320.* Det. Halle testified that after speaking with Det. Dente, he prepared a photo-pack containing a photograph of Alton Hollis to K-Mart manager Roy Allen, and security person George Clifton and that both said that the male individual accompanying the female who presented the stolen credit card of the victim in count two in a failed purchase attempt was not in the photo-pack. *See id. at p. 318.* He further testified that both co-defendants implicated Defendant, not Anton Hollis in counts one, two, and three. *See Id at p. 319.* Further, Mr. Allen, the store manager, who became involved in the transaction in count three concerning the victim two's stolen credit card, positively identified Defendant as the black male accompanying Ms. Miller, the co-defendant. *See Id. at pp. 211 —212.*

The most persuasive evidence of Defendant's guilt are the surveillance videotapes taken from the K-Mart stores where Defendant with the female attempted to use the stolen credit cards and Defendant's own confession to police. *See Id.* 26 of 39 27 *at pp. 4 and 273 — 278: 282 — 283; 288 — 289.* Based on the fact that the jury did learn of the initial suspect, and still determined that Defendant committed the offenses coupled with the overwhelming evidence of his guilt, the Court's confidence in the outcome of the trial has not been undermined. This claim is denied.

(Exh 10: Order denying relief at pp. 4-5).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground four.

Ground Five

Pointer contends that trial counsel was ineffective for failing to present into evidence at trial the booking photo of Alton Hollis. The state trial court found:

Defendant cannot demonstrate the prejudice prong of the *Strickland* test, that had counsel introduced Alton Hall's booking photograph that there is a reasonable probability that the jury would have acquitted Defendant. The State introduced two videotapes, one of the failed attempt to fraudulently use the videotape [sic] at the K-Mart at 3951 34th Street South and one of the attempt at the K-Mart at 2800 34th Street North. Although elsewhere in his Motion, Defendant alleges that the male in the videotape is strikingly similar to Mr. Alton, the jury was able to view the videotape and judge for themselves whether the male depicted in it was Defendant, who in his confession to police twice places himself with the female in K-Mart attempting to fraudulently use the stolen credit card belonging to the victim in count two. *See id., at pp. 274-278.* Based on the compelling evidence of Defendant's guilt, Defendant cannot show that had counsel introduced the photograph of Alton Hall that the jury would have reached a different outcome. This claim is denied.

(Exh 10: Order denying relief at pp. 5-6).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground five.

Ground Six

Pointer faults trial counsel for failing to move for a judgment of acquittal arguing a "hypothesis of innocence" because there was no physical evidence linking him to either crime. In his Rule 3.850 motion, Pointer alleged in pertinent part:

> 39. Trial counsel was ineffective for failing to raise an preserve issue that Defendant's statement with regards to count one, robbery of Anna Richards, was so lacking in relevant detail that it should be considered circumstantial evidence and that as such it was insufficient to support a conviction, where it did not exclude the reasonable hypothesis that Defendant confessed to another purse snatching, especially in light of State's reliance on inadmissible hearsay statement of victim Anna Richards that she had been told by her husband that the credit card company said someone tried to use her card within an hour of the theft.

(See Rule 3.850 motion at unnumbered page 8).

The State court reasonably denied this claim, finding there was sufficient evidence that Pointer snatched Ms. Richards' purse to overcome the hypothesis of innocence:

> At paragraph 38 on unnumbered page 8 of his motion, Defendant contends that counsel should have moved for a judgment of acquittal in count one.
>
> He states that counsel should have argued that there is a reasonable hypothesis of innocence, in that Defendant actually confessed to a different purse snatching in count one. Such an argument regarding a hypothesis of innocence is proper for a judgment of acquittal motion. *See E.M. v. State*, 441 So. 2d 1155 (Fla. 3d DCA 1993); *see also C.S. v. State*, 650 So. 2d 145 (Fla. 2d DCA 1995). Defendant does not state that his confession was void of any time, date or location regarding the first robbery charge. The record indicates to the contrary, that Defendant did confess to the robbery in count one.

- 19 -

Counsel in questioning Det. Halle commented that Defendant, as evidenced in the detective's report of the oral interview, was "specific" to dates, times, and locations in his confession. *See Id. at p. 300, (lines 9— 11)*.

Notwithstanding the victim's testimony regarding her husband contacting the credit card company and learning of the attempt to use the card, there was other sufficient evidence presented at trial corroborating that Defendant did confess to the count one offense, and not a different purse snatching to overcome this hypothesis. Det. Halle testified that Defendant confessed to the purse-snatching at the Palm Harbor Publix on U.S. 19, saying that he exited Ms. Miller's vehicle, approached the victim, grabbed her purse, and jumped back into Ms. Miller's vehicle. *See Id. at pp. 288 — 289*. He testified that Defendant told him the purse snatching netted the trio around $24.00, which approximates the victim's testimony that she had $30.00 in the purse. The victim told police that a black male who later jumped in a two-door red car with black film windows. *See id. at pp. 150; 153*. Two other eye-witnesses testified that they saw the black male enter and drive away in a red car. *See id. at pp. 157— 158; 161 — 162*. Det. Halle testified that the two co-defendants, one of which was Ms. Miller who had access to a red car that her mother permitted her to drive during the time period, implicated Defendant in the offenses in their statements to police, and after learning that police interviewed them, Defendant confessed. *See Id. at pp. 186; 319*. This claim is denied.

(Exh 10: Order denying relief at pp. 6-7).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground six.

### Ground Seven

Pointer alleges his attorney was remiss in failing to object to Ms. Richards' hearsay testimony regarding her husband's telephone call to their credit card company. In its order denying postconviction relief, the state court concluded Pointer failed to prove prejudice:

Even if counsel was deficient in not objecting to this hearsay testimony, defendant cannot show that had counsel objected, and the Court sustained the objection, that he suffered prejudice under the *Strickland* test. *See Johnson v. State*, 593 So. 2d 206 (Fla. 1992) (if one part of the two part *Strickland* test is not met, the claim fails). The testimony did not relate to Defendant's guilt; the location where the perpetrator attempted to use the card took place could not be determined and no one was ever identified, or charged in that attempt to use the credit card. Furthermore, based on Defendant's confession to the offenses, there is not a reasonable probability that had the jury not heard this evidence that the outcome at trial would have been different. *See id. at pp. 288-289.* This claim is denied.

(Exh 10: Order denying relief at p. 7).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground seven.

## Ground Eight

Pointer alleges his counsel was ineffective for failing to properly argue the motion for judgment of acquittal. Specifically, Pointer contends counsel should have argued the evidence was insufficient to go to the jury on the robbery charge because the required element of "fear" was absent. Pointer raised a similar claim in ground nine of his Rule 3.850 motion, claiming the State failed to prove the perpetrator used "force, violence, assault, or putting in fear" during the taking of the purse. The State court reasonably rejected this argument, finding the State adequately established the element of "force," and alternative to "putting in fear." The postconviction court stated as follows:

At paragraph 52 of unnumbered page 11 of his motion, Defendant contends that counsel should have argued at the motion for judgment of acquittal as to count one that the State failed to establish an element of the

offense, that the perpetrator used in the course of the taking "force. violence, assault, or putting in fear."

To be successful on a motion for judgment of acquittal for snatching property for robbery involving purse-snatching, the perpetrator must not employ more than the force necessary to remove the property from the person. *Owens v. State*, 787 So. 2d 143 (Fla. 2d DCA 2001); *McCloud v. State,* 335 So. 2d 257 (Fla. 1976). The victim testified that the perpetrator struck her on the head taking her purse as she stumbled. *See id.* at pp. 148 — 149. An eyewitness testified from her perspective that she saw the perpetrator push a woman, grab her purse, and run off. *See Id. at p. 165.* Exerting physical force on a person, such a striking them, constitutes sufficient "force" with in the meaning of the robbery statute, section 812.13, Fla. Stat. Owens at 144. As the testimony indicated the perpetrator struck the victim to effectuate the theft, had counsel argued the lack of force, the Court would have denied the motion for judgment of acquittal. This claim is denied.

(Exh 10: Order denying relief at p. 8).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground eight.

Ground Nine

Pointer complains his attorney failed to object to the State's improper closing argument as being a comment on Pointer's right to remain silent. Pointer does not specifically identify the comment, nor does he give a record cite. Consequently, the allegation as stated fails to establish deficient performance or prejudice regarding counsel's acts or omissions. The claim raised in ground twelve of his motion for postconviction relief suffers from the same insufficiency, and was properly rejected by the state court in its order denying relief:

Defendant does not specifically identify those statements at page 356 that he contends were comments on his right to remain silent. The Court finds that the statements on the page could not be fairly construed as a comment on Defendant's right to testify. *See Miller v. State*, 847 So. 2d 1093 (Fla. 4th DCA 2003)(citing to *State v. Kinchen*, 490 So. 2d 21 (Fla. 1985). Nowhere on this page does the State even mention Defendant testifying or not testifying.

A review of this page indicates that the State argued that there was no actual evidence, only insinuation, admitted at trial to suggest that the detectives acted in any improper manner to obtain a confession from Defendant. *See Id. at p. 356.* The defense argued in its initial closing argument that the police obtained the confession thorough [sic] trickery. *See id. at p. 349.* The State countered in arguing on that page and the pages surrounding it that the police engaged in proper tactics in obtaining the confession from Defendant. *See id at pp. 355 — 358*. The evidence indicated that in his first conversation with Defendant, Defendant denied committing the offenses, but later confessed when Detective Halle informed Defendant that he had interviewed the other participants days earlier. *See id. at pp. 295 — 297*. This claim is denied.

(Exh 10: Order denying relief at pp. 9-10).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground nine.

## Ground Ten

Pointer contends his counsel was ineffective for failing to move to strike for cause juror Harriet Barton because she was biased, having been a victim of robbery. The state trial court denied relief, stating:

To be cognizable in a post-conviction motion, any claim that a biased juror served on Defendant's jury must be apparent from the record of the proceedings. *See Jenkins v. State*, 824 So. 2d 977, 982 (Fla. 4th DCA 2002). That relevant portion of the record concerning questioning of the juror on this point is reproduced below:

> **Prospective Juror Barton**: Yes, I forgot about a month ago I had
> my — actually, money - I had just left the bank — stolen from my
> purse.
>
> **The Court**: Okay. Can you set that aside and just judge this case
> as we see it?
>
> **Prospective Juror Barton**: Yes, I could. *See id. at p. 32, lines 18
> - 23.*
>
> Consequently, the record refutes his claim that counsel permitted a
> biased juror to decide his case. Since the Juror Barton assured this Court
> under oath that she could remain impartial and put aside her own experience
> and render a fair verdict in Defendant's case, even if counsel lodged a for
> cause objection to Ms. Barton sitting on the jury, the Court would have denied
> the objection. This claim is denied.

(Exh 10: Order denying relief at p. 10).

The state court's decision was not "contrary to" clearly established precedent of the

Supreme Court of the United States and did not involve an "unreasonable application" of

such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and

he is not entitled to habeas corpus relief on ground ten.

Ground Eleven

Pointer argues his counsel was ineffective for failing to move to strike for cause juror

McSherry. Pointer contends the juror's comment that "it would be nice to hear your side of

the story too, kind of his side of what happened" is both an infringement on Pointer's right

to remain silent, and a clear indication that if Pointer failed to testify, the juror would find

him guilty. Again, the state court reasonably rejected this argument:

> Defendant cannot demonstrate that counsel was deficient in moving to
> strike Juror McSherry for cause or that the Court would have granted it. Ms.
> McSherry's comments do not evidence bias, that she would hold defendant's
> failure to take the stand or present evidence in his case-in-chief against him
> in rendering a verdict. *Jenkins*, supra. The comment only emphasizes that she

would prefer such, not that she would require the defense present his testimony or other evidence before she could return a not guilty verdict. *See id. at p. 103.* The Court indicated as much in its comments concerning the State's objection to counsel's comment concerning Ms. McSherry and three other jurors on the subject. *See id. at 100 — 109.* The pertinent part of the exchange is reproduced below.

> **Ms. Hittos**: ... besides Miss Blackburn and Mr. Stolbert and Mr. Nixon and Miss McSherry who raised their hand, would say that they'd require me to put on witnesses and evidence to prove Mr. Pointer's innocence?
>
> **Mr. Migliore**: Could we approach for just a moment?
>
> **The Court**: Approach the bench.
>
> **Mr. Migliore**: I don't believe there's been any statement from any of those witnesses that they would require — certainly not the last three — that they would require —
>
> **The Court**: Objection well taken...." *See id. at pp. 109, lines 8-21.*

As the record conclusively refutes Defendant's claim, this claim is denied.

(Exh 10: Order denying relief at pp. 10-11).

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground eleven.

### Ground Twelve

Pointer alleges his attorney was ineffective for failing to confront the co-defendants as requested. Specifically, Pointer contends his Sixth Amendment rights were violated when trial counsel refused to allow him to confront his accusers. This claim was adequately

addressed by the state court in denying ground three of the Rule 3.850 motion. (See response to ground three of the federal petition above).

Pointer states further that he was implicated in this crime by the alleged co-defendant who was not called to testify by the State or defense counsel. Pointer alleges that since the case was based on hearsay without the right to confront and cross-examine his accusers, he was deprived of his constitutional right to confrontation.

To the extent Pointer attempts to raise a free-standing claim of denial of his right to confrontation, such claim is procedurally barred. Pointer should have, but did not, raise a confrontation issue on direct appeal. He did refer to a violation of his confrontation rights in his Rule 3.850 motion, but the issue was presented under the guise of ineffective assistance of counsel for opening the door to hearsay statements of the co-defendants. (See Rule 3.850 motion at unnumbered page 6). To avoid default under Florida law, a confrontation claim must be preserved at trial and raised on direct appeal, not in a collateral proceeding. *See, e.g., Reaves v. State*, 826 So. 2d 932, 936 (Fla. 2002) (postconviction claim that defendant's confrontation rights were violated procedurally barred where claim was or should have been raised on direct appeal).

Even if the confrontation claim is not procedurally barred, however, Pointer cannot obtain relief from this Court. The denial of a defendant's Confrontation Clause rights is reviewed for harmless error. *Coy v. Iowa*, 487 U.S. 1012, 1021-1022 (1988). *See also, United States v. Trucchio*, 2007 U.S. App. LEXIS 1968 (11th Cir. 2007) *citing United States v. Ndiaye*, 434 F.3d 1270, 1286 (11th Cir.), *cert. denied, Diaw v. United States*, ___ U.S. ___, 127 S. Ct. 128 (2006).

In light of the State's evidence implicating Pointer, it is objectively reasonable to conclude the claimed constitutional error, if such existed, did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

As the State postconviction court correctly noted, no witnesses identified Pointer at the scene of the robberies in count one and two. However, Pointer gave a voluntary confession and a signed statement (Exh 17: TT 272-283); K-Mart store manager Roy Allen positively identified Pointer in the courtroom (having been given no opportunity to do so by a photo-pack) as the male accompanying the female at his store in a failed attempt to use the credit card stolen in count two. (Exh 17: TT 211-212, 286-287). Moreover, the State introduced the two surveillance videotapes taken from different K-Marts where the perpetrator attempted to use the stolen credit cards. (Exh 17: TT 4). Under these circumstances, the hearsay statements of the co-defendants could not have had a "substantial and injurious effect or influence in determining the jury's verdict."

The state court's decision was not "contrary to" clearly established precedent of the Supreme Court of the United States and did not involve an "unreasonable application" of such precedent. Pointer has not alleged any facts to show that counsel was ineffective, and he is not entitled to habeas corpus relief on ground twelve.

In summary, the state court's denial of all twelve ineffective assistance of trial counsel claims, to the extent they were sufficiently pled and properly exhausted, is neither contrary to, nor an unreasonable application of, the *Strickland* standard and is therefore entitled to deference under the AEDPA.

Pointer's Supplemental Claim

Pointer claims that trial counsel was ineffective for failing to file a motion to suppress Pointer's confession upon the legal premise that it was induced through false promises made by the investigating police officer, to Pointer, that if Pointer gave the statement, Pointer would not be charged with crimes but rather the officer "would let [Petitioner] go."

This claim is procedurally barred. In March, 2005, Pointer properly filed a motion for postconviction relief in the trial court pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. Pointer raised fourteen allegations alleging trial counsel was ineffective for: (1) failing to object to the insufficient notice of enhanced penalty provided by the State; (2) opening the door to testimony from Detective Halle regarding Pointer's previous arrests and the fact that at the time of his interrogation in reference to the instant case, Pointer had other pending offenses; (3) opening the door to hearsay testimony from his co-defendants implicating Pointer in the crimes charged in the instant case; (4) failing to call Detective Joe Dente; (5) failing to introduce into evidence Alton Hall's booking photograph; (6) failing to move for a judgment of acquittal in Count One; (7) failing to object to Ms. Richards' hearsay testimony regarding her husband's telephone call to their credit card company; (8) failing to adequately cross-examine Ms. Richards; (9) failing to argue in the judgment of acquittal as to Count One that the State failed to establish an element of the offense; (10) failing to argue in the motion for judgment of acquittal as to Count Two that the evidence did not show that Pointer was a principal or aider and abettor; (11) failing to object to that portion of the State's closing argument bolstering the credibility of Detective Dente; (12) failing to object to the State's improper closing argument as being a comment on Pointer's right to

remain silent; (13) failing to move to strike for cause Juror Harriet Barton; (14) failing to move to strike for cause Juror McSherry. (See Respondent's Exhibit 9, Motion to Vacate or Set Aside).

The specific issue Pointer raised in his First Amended Petition for Writ of Habeas Corpus, that trial counsel was ineffective for failing to file a motion to suppress Pointer's confession upon the legal premise that the investigating police officer made false promises Pointer would not be charged with crimes but rather the officer "would let [Petitioner] go," was not presented to the state court in the postconviction motion.

The only claim in the Rule 3.850 motion indirectly mentioning the validity of Pointer's confession was ground two, in which Pointer took issue with counsel's trial strategy in allowing evidence that Pointer had other pending charges against him at the time of his interview with the detective in this case. In the order denying the motion for postconviction relief, the state court made the following findings of fact and conclusions of law as to ground two:

> At paragraph 14 at the bottom of unnumbered page 3 of his motion, Defendant contends that counsel opened the door to testimony from Det. Halle of Defendant's previous arrests and fact that at the time of his interrogation in the above referenced case that he had other pending offenses.

> Defendant cites to no portion of the record explaining when and where counsel unwittingly opened the door nor that the State even introduced Defendant's "other charges and his previous arrests." The Court's review of the trial transcript indicates that counsel knowingly in her opening statement told the jury that Defendant was already in jail on other unrelated matters at the time of his interview in the above referenced case. *See Trial Transcript at pp.* 142 — 143. Nowhere in the trial transcript does the State mention anything other than what counsel already told the jury; the State never mentioned any previous arrests, the nature of the charges in was being held on prior to the instant offense, nor the existence of Defendant's prior criminal record.

Defendant states he was prejudiced by counsel in telling the jury that Defendant was already in jail for another charge when counsel could not produce evidence at trial that would support her statement in opening argument that Defendant was promised leniency on that other charge. These statements were made at part of a comprehensive trial strategy. It is recognized that whether a particular action on the part of counsel was part of a cogent, trial strategy usually requires an evidentiary hearing. *Hamilton v. State,* 860 So. 2d 1028 (Fla. 5th DCA 2003); *accord Harris v. State,* 768 So. 2d 1179 (Fla. 4th DCA 2000). Since none of the witness or victim of the robberies could identify Defendant, the most compelling and damaging evidence against Defendant was his confession to all three offenses. *See id. at pp. 273 — 278; 282 — 283; 288 289.* To offset the confession, the record indicates that counsel's strategy was to portray the confession as unreliable under all the circumstances, not just that Defendant was promised leniency, and to attack the detective's investigation of the offenses as insufficient. *See id at pp. 142 — 143.* During the testimony of the primary detective, she attempted to elicit testimony to invoke distrust in the confession and errors in investigating the offenses. *See id. at pp. 289 — 304; (305 — 308 omitted as proffered testimony); 309 - 316.* The implication from the fact that Defendant was already in jail, coupled with the other circumstances, being that Defendant was susceptible of being tricked into providing a false confession. *See id. at 380 — 389.*

Further, Defendant cannot show the prejudice prong of the *Strickland* test, that there is a reasonable probability that the outcome would have been different if counsel did not mention this information to the jury. Although no witnesses identified Defendant at the scene of the robberies in count one and two, not only did Defendant confess, K-Mart store manager Roy Allen positively identified Defendant in the courtroom (having been given no opportunity to do so by a photo-pack) as the male accompanying the female at his store in a failed attempt to use the credit card stolen in count two. *See id. at pp. 211 — 212; 286 — 287.* The State further introduced the two surveillance videotape[s] taken from different K-Marts where the perpetrator attempted to use the stolen credit cards. *See Id. at p. 4.* This claim is denied.

(See Respondent's Exhibit 10, Order Denying Motion for Postconviction Relief, at pp. 3-4).

Not only did Pointer fail to raise an allegation that trial counsel was ineffective for not seeking suppression of his confession, but nowhere in the Rule 3.850 motion is any

contention that the investigating detective promised Pointer he would not be charged, but would be released if he gave a statement to police.[2]

Because Pointer never fairly presented to the state court a claim that counsel was ineffective for failing to file a motion to suppress his statements on any basis, this allegation is unexhausted and procedurally barred. This Court must dismiss those claims or portions of claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, or are not exhausted but would clearly be barred if the petitioner returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). *See also, Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993)(Federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Cause must ordinarily be something external to the defense, *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)(ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

---

[2] To the contrary, in the Rule 3.850 motion, Pointer made reference to an offer of "leniency" by police. (See Respondent's Exhibit 9: Motion for Postconviction Relief at unnumbered page 4).

In addition, Pointer does not meet the prejudice or fundamental miscarriage of justice exceptions to lift the state procedural bar. He does not suggest the existence of new and reliable evidence of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). Absent a showing of cause and prejudice, federal habeas courts may not reach the merits of "procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992)(citing *Murray v. Carrier*, 477 U.S. 478 (1986)). *See also, Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir. 1995)(A federal habeas court should not even discuss the merits of a claim that has been procedurally defaulted in state court). Pointer failed to present his claim to the state courts in a procedurally correct manner so as to necessitate review on the merits, and it is too late for him to obtain such review. Therefore, ground two of the First Amended Petition for Writ of Habeas Corpus must be dismissed as procedurally defaulted.

**Accordingly, the Court orders:**

That Pointer's petition is denied.  The Clerk is directed to enter judgment against Pointer and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on July 9, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Tyrone Pointer, Pro Se